UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                Case No. 07-81303-WRS
                                                     Chapter 13
CHRISTOPHER TODD HARVEL,

    Debtor

## MEMORANDUM DECISION

This Chapter 13 case came before the Court for hearing on September 14, 2011, in Opelika, Alabama, on the Debtor's Motion to Approve Compromise. (Doc. 61). The Debtors were present by counsel Charles M. Ingrum, Jr., Fort McClellan Credit Union was present by counsel Robert D. Carlee and Chapter 13 Trustee Curtis C. Reding was present. For the reasons set forth below, the objection of Fort McClellan Credit Union is overruled and the Debtor's motion is GRANTED.

## I. Facts

The Debtors filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on November 5, 2007. (Doc. 1). The Debtors filed a Chapter 13 Plan with their petition. (Doc. 2). Pursuant to the Court's procedures, when a Chapter 13 Plan is filed with the petition, the Court will mail copies of the Plan to each creditor whose name and address appears on the mailing matrix filed by the debtors. (Doc. 17); see also Loc. Bankr. R. 3015-1(b)(Local Bankruptcy Rules for the Middle District of Alabama). The Debtors' original Plan proposed that the debt to the Credit Union be paid directly by the Debtors, without modifying the lien.[1] When

---

[1] The Court will discuss lien modification in depth in Part II(B). In general terms, a lien modification involves paying a secured creditor the value of its collateral, treating the balance as an unsecured claim.

the Court uses the terminology "direct pay," it means that the Debtors will pay the creditor directly rather than pay the Chapter 13 Trustee, who in turn would pay the creditor. The term "modify the lien" or "lien modification" will be discussed in Part II(B) below.

On December 4, 2007, the Debtors amended their plan, increasing the amount to be paid on unsecured claims but not changing the treatment of the Credit Union's secured claim.[2] (Doc. 25). The Court's record does not contain proof of service of the December 4, 2007 Plan.[3] On January 4, 2008, the Debtors again amended their Chapter 13 Plan, this time significantly changing the treatment of the Credit Union's secured claim. (Doc. 27). Again, the Court's record does not contain proof of service of the January 4, 2008 Amended Plan. The January 4, 2008 Plan provides that payments on the Credit Union's secured claim are to be made to the Chapter 13 Trustee rather than directly to the creditor, as provided in the Debtors' first two plans. Additionally, it provides for a secured value of $25,500, interest rate of 10% and monthly payments of $739. The January 4, 2008 Plan treated the Credit Union's secured claim significantly less favorably in that it was to be paid $25,500, plus interest at 10%. The difference between the total amount of the Credit Union's claim, and the secured value (i.e. $25,500), is treated as an unsecured claim. In this case, unsecured claims share a "POT" of $13,056.

On February 26, 2008, the Court confirmed the Debtors' January 4, 2008 Plan. (Doc. 32). The Chapter 13 Trustee had recommended that the Court confirm the Plan and no creditors, including the Credit Union, had filed objections. On March 4, 2008, Robert D. Carlee filed a

---

[2] That is, the December 4, 2007 Plan still proposed that the claim of the Credit Union be paid by the Debtors directly, without modifying their lien.

[3] Debtors are required to serve copies of amended Chapter 13 plans on creditors. Loc. Bankr. R. 3015-1(c).

2

Notice of Appearance on behalf of the Credit Union. (Doc. 34).[4] Also on March 4, 2008, Carlee timely filed a Proof of Claim on behalf of the Credit Union making a claim that it was owed $34,622.55, that its indebtedness was secured by the Debtor's Chevy Tahoe, and that the Tahoe was worth $35,000. The Credit Union did not object to confirmation of the Debtors' Plan and the Debtor did not object to the Credit Union's claim. Neither party requested a hearing to determine the value of the Chevy Tahoe.[5]

The Debtors performed under their Plan for more than three years when, on June 20, 2011, the Debtors' Tahoe was stolen. The Debtors have negotiated a settlement with the insurance company for $15,000. The Debtors propose to pay the Credit Union the balance of secured claim, which is $9,337.85, and keep the remaining $5,662.15 to purchase another vehicle. (Doc. 61). The Credit Union objects, contending that it is fully secured and that it should get all of the remaining proceeds, noting that the Debtors did not object to its claim. (Doc. 67).

## II. LAW

This Court has jurisdiction to hear this contested matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (M).

---

[4] A creditor may file a request for notice indicating where notices are to be sent. Fed. R. Bankr. P. 2002(g)(1). Moreover, under the Court's CM/ECF electronic filing system, electronic notices of all entries are sent to parties who have filed requests for notices.

[5] Either the Credit Union or the Debtors could have requested a hearing to value the Tahoe. Fed. R. Bankr. P. 3012.

## A. Notice to Creditor Necessary

Before addressing the merits of the issues raised by the parties, the Court notes that the Debtors did not comply with the Court's Local Rule governing service of Chapter 13 Plans on creditors. Loc. Bankr. R. 3015-1(a)-(c) provides as follows:

> (a) Chapter 13 Plans shall confirm, as nearly as practicable, to Local Form 3.
>
> (b) A Chapter 13 Plan shall be filed with the petition if practicable, but not later than 14 days thereafter, unless the Court approves, for good cause shown, an extension of time. If a Chapter 13 Plan is not filed with the petition, the Debtor shall serve copies upon all parties in interest and attach proof of service to any such plan filed at any time other than with the petition.
>
> (c) Amended Chapter 13 Plan, filed prior to confirmation of the initial Plan, shall be served upon the Chapter 13 Trustee and any party in interest who is affected by the amendment.

Creditors who are not given adequate notice of a plan are not bound by it. See, City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296-97, 73 S.Ct. 299 (1953); In re Calvert, 907 F.2d 1069, 1070 (11th Cir. 1990). However, in this case, the creditor concedes that it had actual knowledge of the Amended Plan, notwithstanding the fact that the Debtor failed to file proof of service of the Amended Plan. The Credit Union phrases the issue as follows:

> The undersigned [creditor's lawyer] does not have any reason to dispute that the amendment may have been sent to Creditor's Roanoke, Alabama branch, but the main branch in Anniston, Alabama, did not receive it to forward to the undersigned. Creditor submits that knowledge of the last January 4, 2008 amendment should not be material in the determination of the value of the collateral securing Creditor's claim because Creditor submits that

4

> it was not necessary for Creditor to object to confirmation to determine any value of collateral issue.

(Doc. 67, p. 2) (bracketed matter added). Thus, under the facts of this case, the Debtor's failure to file proof of service of his Amended Plan, as required by Loc. Bankr. R. 3015-1(c), is not fatal to the Debtor's motion, as the creditor concedes that it had actual notice of plan. See In re Jones, 271 B.R. 397, 402 (Bankr. S.D.Ala. 2000)(Creditor with notice of plan bound notwithstanding fact that confirmation occurred prior to expiration of claims bar date).

### B. The Credit Union is Bound by the Debtors' Plan

This contested matter poses the question of whether a proof of claim, which is "deemed allowed" as no objection had been filed, overrides a confirmed Chapter 13 Plan. "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). This potential conflict was anticipated in the Court's local rules. Loc. Bankr. R. 3015-4 provides as follows:

> (b) The "amount of debt" or "amount of arrearage" listed by the debtor in the chapter 13 plan is solely an estimate, and confirmation of the plan will not have a binding effect on those amounts. The allowed claim will control the "amount of debt" or the "amount of arrearage."
>
> (c) The "value of collateral" listed by the debtor in the chapter 13 plan will supercede a different value listed in the claim filed by the creditor unless the creditor objects. The creditor may but need not raise this objection before confirmation of the plan.

5

The reason for this Court's local rule is that debtors' plans are frequently off, by a small amount, of the amount owed on secured claims. To prevent the necessity for large numbers of objections, involving small amounts which are not in dispute, the Court would accept the amount of the debt as set forth in the proof of claim. On the other hand, where a debtor seeks to modify the lien of a creditor, pursuant to 11 U.S.C. § 1322(b)(2), he could do so in his plan. The provisions of Loc. Bankr. R. 3015-4(b), (c) are dispositive here. If a debtor wants to contest the amount owed a secured creditor, he must object to the creditor's claim. Where a debtor seeks to modify a creditor's lien, and the creditor disputes the value assigned the collateral by the debtor, it is incumbent upon the creditor to object to the plan, or otherwise put the matter in controversy.

The Debtors have modified the claim of the Credit Union in this case. Except in the case of claims secured by a mortgage on a debtor's homestead, or secured by a vehicle purchased within 910 days of the date of the petition in bankruptcy, a debtor may modify the rights of a holder of a secured claim. See 11 U.S.C. §§ 1322(b)(2), 1325(a). This means that the Debtors may pay the secured value, that is the value of the collateral securing the claim, in full, while treating the balance as an unsecured claim. 11 U.S.C. § 506. In the case at bar, the Debtors modified the rights of the Credit Union by doing just that.

While the Credit Union did not make an issue of the last sentence in Loc. Bankr. R. 3015-4(c), the Court will explain for clarity sake. The last sentence provides as follows: "The creditor may but need not raise this objection before confirmation of the plan." Loc. Bankr. R. 3015-4(c). As noted by the Credit Union in its brief, the claims bar date is 90 days after the date of the meeting of creditors, Fed. R. Bankr. P. 3002(c), while the hearing on confirmation is usually between 20 and 45 days after the meeting of creditors. 11 U.S.C. § 1324(b). The purpose of the

Court's local rule is to permit a creditor the full 90 days to file its claim. In the event the creditor timely files a claim and it is after the hearing on confirmation of the plan, it is incumbent on the creditor to promptly bring the matter to the attention of the bankruptcy court. Here, the creditor slept on its rights for three years, objecting only when there was a pot of money to fight over. The Court will not attempt to value the collateral at this late date–more than three years after confirmation and after the car has been stolen. The Credit Union's request for a valuation hearing is barred by the doctrine of latches. See In re Anderson, 439 B.R. 206, 210 (Bankr. M.D. Ala. 2010) (Creditor who failed to object to plan was bound by its terms and claim was barred under doctrine of laches). In the case at bar, the delay was more than three years. It would be nearly impossible to value a vehicle, more than three years after the fact, where the vehicle is no longer available for inspection.

### III. CONCLUSION

The Debtors' motion is granted according to its terms. The objection of the Credit Union pits its "deemed" allowed claim against the binding effect of a confirmed plan. This potential conflict is anticipated in the Court's local rules, which governs the result here. The Credit Union's request to value its collateral is not timely and barred by the doctrine of laches.

Done this 27th day of October, 2011.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Charles M. Ingrum Jr., Attorney for Debtor
Robert D. Carlee, Attorney for Fort McClellan CU
Curtis C. Reding, Trustee

8